HANDLER CORPORATION and Handler Development, Inc., Defendants Below, Appellant,

v.

Leandro TLAPECHCO, Plaintiff Below, Appellee.

No. 452, 2005.

Supreme Court of Delaware.

Submitted May 3, 2006.
Decided June 6, 2006.

Louis J. Rizzo, Jr. (argued) and David J. Soldo, Reger Rizzo Kavulich & Darnall, L.L.P., Wilmington, DE, for appellants.

Bartholomew J. Dalton (argued) and Laura J. Simon, Dalton & Associates, P.A., Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice:

The defendant-below, Handler Development, Inc., was a general contractor that built residential homes in Middletown, DE.[1] Handler hired Esperanza Painting as a painting subcontractor. On May 18, 2002, Leandro Tlapechco, one of Esperanza's employees, was painting in one of the homes when he fell from an "open walkway" and suffered serious injuries. Tlapechco sued Handler for negligence. Before trial, Handler moved for summary judgment claiming that it owed Tlapechco no duty of care because it did not actively control the manner and method of Esperanza's work nor did it voluntarily assume responsibility for workplace safety. The trial judge granted Handler's motion for summary judgment on those issues but allowed the case to proceed under a newly crafted "obvious safety hazard exception." The jury found that Handler breached a duty owed to Tlapechco based on the trial judge's innovative exception, and returned a verdict for Tlapechco.

On appeal, Handler claims that the trial judge erred by crafting and applying an "obvious safety hazard exception," and by allowing the case to proceed to the jury on that theory. Tlapechco cross-appeals arguing that the trial judge erred by granting Handler's motion for summary judgment because there were genuine issues of material fact about, among other things, whether Handler voluntarily assumed responsibility for workplace safety. We find that the trial judge's innovative "obvious safety hazard exception" is contrary to well-established Delaware Law. Moreover, we find that the trial judge erred by granting Handler's motion for summary judgment because there were genuine issues of material fact about whether Handler voluntarily assumed responsibility for safety. Accordingly, we reverse the judgment of

the Superior Court and remand the case for a new trial.

## I.

### A. Facts

In 2002 Handler was building approximately twenty homes at the Legends in Middletown, Delaware. Handler was the general contractor during the construction, but subcontracted most of the work. Esperanza and Guzman builders were two of the subcontractors. Esperanza contracted to perform all of the exterior and interior painting of each home.[2] Guzman contracted to complete the framing of each house.[3] In addition to framing, under its contract with Handler, Guzman was obligated to install a temporary safety rail in homes that had a second floor balcony above the foyer.[4]

On May 18, 2002, Hugo Espinoza, Esperanza's owner, instructed two of his employees, Marcello Alvarez and Tlapechco, to paint the interior of Lot 361.[5] Alvarez and Tlapechco went to the second floor to begin painting. While ascending the steps, both men could see that no safety rail was present on the balcony.[6] In essence, the balcony was an "open walkway" at the time Alverez and Tlapechco were in

the house. Alvarez and Tlapechco began painting the master bedroom on the second floor. Alvarez used a sprayer to apply the paint and Tlapechco followed Alvarez with a paint roller. After finishing the master bedroom, Alvarez and Tlapechco entered the "open walkway."

Alvarez began spraying the ceiling above the "open walkway." Tlapechco, still following Alvarez with a paint roller, began "rolling" the ceiling. Tlapechco, while "rolling" the ceiling and walking backwards, stepped on the edge of the "open walkway" and fell to the foyer below. As a result of the fall, Tlapechco was paralyzed from the waist down.[7] Tlapechco brought suit against Handler alleging that Handler negligently failed to ensure the presence of a safety rail thereby causing his injuries.[8]

### B. Procedural History

Before trial, Handler moved for summary judgment. Handler claimed that it was entitled to summary judgment because it owed no duty to Tlapechco. Handler explained the general rule: a general contractor owes no duty to an independent contractor's employee. Handler then maintained that there were only three ex-

---

**2.** The home at issue in this litigation was the home Handler built on Lot 361.

**3.** Handler contracted with Leroy Fisher, Inc. to complete the framing of each house. Fisher subcontracted the work to Guzman. It is undisputed that Guzman was required to complete the framing according to the Fisher–Handler contract.

**4.** The house in question had a second floor balcony at the top of the steps that overlooked the foyer. The framing contract required Guzman to provide a temporary safety rail that would eventually be replaced by a permanent railing.

**5.** Tlapechco began working for Esperanza painting in February of 2002.

**6.** There was a dispute at trial about why the safety rail was missing. Some suggestion was made that the drywall subcontractor employees removed the safety rail, which was attached to the wall studs, so that they could install the drywall. The drywall subcontractor denied the allegations and claimed that the safety railing was not present when its employees installed the drywall.

**7.** Tlapechco also lost the ability to control his bladder and all sexual function. Tlapechco was 19 years old at the time of the fall.

**8.** More detailed facts are discussed in the various sections of this Opinion dealing with the specific issues on appeal.

ceptions to that general rule: a general contractor owes a duty to an independent contractor's employee if the general contractor: (1) exercises active control over the manner and method of the independent contractor's work, (2) voluntarily assumes responsibility for safety, or (3) maintains possessory control over the work area during the work.[9] Handler maintained that none of the exceptions to the general rule applied, and therefore, it owed no duty to Tlapechco and the trial judge was required to grant summary judgment in its favor. Tlapechco claimed that there were material issues of fact in dispute about the applicability of all three exceptions to the general rule.

In a bench ruling on August 16, 2005, the trial judge denied Handler's motion for summary judgment. The trial judge stated:

> The motion for summary judgment filed by Handler is denied preliminarily as a result of the public policy issues, which were discussed at oral argument, including any exception to a duty in absence of control by the general contractor.
>
> I find that there is sufficient evidence to survive a motion for summary judgment to meet three factors, a standard which is an issue of first impression in Delaware, and I am establishing the standard as, one, there was an obvious safety hazard—I should preface it by saying there are factual issues with regard to this standard.
>
> One, whether there is an obvious safety hazard. Two, whether there is a safety issue for multiple subcontractors. And three, whether the risk of danger is not inherent in the type of work of a single subcontractor, specifically the employer of the plaintiff in this case.[10]

The case then went to trial on August 22, 2005. At the prayer conference the parties disputed the specifics of the trial judge's earlier summary judgment ruling. Handler claimed that the trial judge had ruled that Handler, as a matter of law, did not: (1) exercise active control over the manner and method of work, (2) voluntarily assume responsibility for safety, or (3) maintain possessory control over the work area during the work. Handler claimed that she had denied summary judgment solely because there was a factual issue about the trial judge's newly adopted "obvious safety hazard exception." Therefore, in Handler's view, the trial judge must instruct the jury that it could find Handler negligent only if the jury determined that Handler breached its duty owed under the "obvious safety hazard exception." Tlapechco claimed the trial judge never granted summary judgment in Handler's favor on any issue. Therefore, in Tlapechco's view, the trial judge could instruct the jury that they could find that Handler owed a duty to Tlapechco if the jury found that Handler actively controlled the work, voluntarily assumed job-site safety, or if the new "obvious safety hazard exception" was met because the record contained facts to support the applicability of each exception. The trial judge reserved ruling on the jury instruction and told the parties that she would notify them by email of her decision.

The next day the trial judge sent an email to the parties. In her email, she stated:

> At the time the Court considered Handler's motion for summary judg-

---

9. Handler correctly stated Delaware Law. We discuss Delaware Law on general contractor liability in more detail below. *See infra* pp. 742–43.

10. The trial judge later referred to her innovatively crafted exception as the "obvious safety hazard exception."

ment, reviewing the facts in the light most favorable to the non-moving party, the evidence did not demonstrate active control or a voluntary assumption of the duty to ensure safety by Handler.

However, as a matter of first impression, in consideration of the public policy issues discussed during oral argument, the Court created an additional exception to the active control rule. This new exception shall be referred to as the "obvious safety hazard exception." Three factors must be met: (1) that there was an obvious safety hazard on the construction site; (2) that the obvious safety hazard created a safety issue for more than one subcontractor; and (3) that the risk of danger was not inherent to the type of work performed by a single subcontractor. Therefore, the Court denied Handler's motion for summary judgment. Accepting the facts in the light most favorable to the non-moving party, the obvious safety hazard exception applies to Handler.

At the close of the evidence, the parties presented competing ... jury instructions ... Although the Court ruled for the purposes of summary judgment that Handler had not assumed active control and had not voluntarily assumed a duty to ensure safety, there is no prohibition against the Court reconsidering these rulings in the context of jury instructions. Having heard all of the testimony at trial and having considered the documentary evidence, I find as a matter of law that Handler did not retain active control over the manner in which the subcontractor's work was car-

ried out and the methods used. The testimony and evidence at trial, as opposed to the summary judgment record, was more extensive on the issue of Handler's assumption of a duty of employee safety. Nevertheless, I conclude as a matter of law, considering the facts in the light most favorable to plaintiff, that at most, Handler assumed some responsibility for the safety of subcontractor employees, but did not assume total responsibility.

Therefore, the Court will not give any of the requested instructions premised upon general contractor control. Instead, the Court will instruct as follows with regard to Handler's duty:

> In order for you to find that Handler Corporation acted negligently, you must find all of the following three factors:
> (1) that there was an obvious safety hazard on the construction site;
> (2) that the obvious hazard created a safety issue for more than one subcontractor, and
> (3) that the risk of danger was not inherent to the type of work performed by a single subcontractor, in other words, more than one subcontractor was at risk of danger as a result of the specific obvious safety hazard.[11]

In sum, the trial judge's email supported Handler's position. The trial judge reiterated that she granted summary judgment on the recognized exceptions and only allowed the case to proceed based on her innovative "obvious safety hazard exception." [12] Therefore, the trial judge instructed the jury that Handler had no duty

---

11. This was the exact instruction given with regard to Handler's duty.

12. Moreover, the trial judge appeared to revisit the control and voluntary assumption of safety exception. She claimed that even after the admission of all the evidence she conclud-

ed that Handler did not exercise active control, and "Handler assumed some responsibility for the safety of subcontractor employees, but did not assume total responsibility" without explaining the significance, if any, of the putative division of responsibility.

to Tlapechco other than a duty based on the newly crafted "obvious safety hazard exception."

A Superior Court jury returned a verdict of $5,750,000 in favor of Tlapechco. The trial judge reduced Tlapechco's award to $3,450,000 because the jury found Tlapechco 40% negligent. Handler appealed and Tlapechco cross-appealed. We now address those claims.[13]

## II.

### A. Handler's claim that the trial judge erred by adopting the "obvious safety hazard exception."

Handler claims that the trial judge erred by denying its motion for summary judgment because she grossly deviated from existing Delaware common law when she adopted the "obvious safety hazard exception." Whether the trial judge's new standard comports with Delaware Law is a question of law. "We review issues of law de novo."[14]

The common law of Delaware regarding a general contractor's duty to an independent contractor's employee is well-established.[15] "Generally, an owner or general contractor does not have a duty to protect an independent contractor's employees from the hazards of completing the contract."[16] There are, however, recognized exceptions to this general rule in Delaware common law. Specifically, a general contractor has a duty to protect an independent contractor's employees when the general contractor:[17] (1) actively controls the manner and method of performing the contract work;[18] (2) voluntarily undertakes the responsibility for implementing safety measures;[19] or (3) retains possessory control over the work premises during work.[20]

The trial judge found that "public policy" required her to add the "obvious safety hazard exception" to the three recognized

13. Handler also claimed it was denied a fair trial because the trial judge erred by admitting evidence of Martin Dugan's alleged alcohol use, barring evidence of Tlapechco's alcohol consumption and by precluding evidence of Tlapechco's illegal-alien status, while allowing Tlapechco's proof of economic damages in U.S. dollars. Because we reverse the judgment of the Superior Court on other grounds, we do not need to decide either of these alternative claims. Handler is free to reargue these claims at the new trial.

14. Chrysler Corp. v. Chaplake Holdings, Ltd., 822 A.2d 1024, 1031 (Del.2003) (citing City of Wilmington v. Parcel of Land, 607 A.2d 1163, 1166 (Del.1992)).

15. Hawthorne v. Edis Co., 2003 WL 23009254, at *2 (Del.Super.Ct. July, 14, 2003)(As a general rule, "[i]t is well settled that neither the owner nor general contractor has a duty to protect an independent contractor's employee from hazards created by doing of the contract work or condition of the premises or manner in which work is performed ...").

16. Kilgore v. Kroener, 2002 WL 480944 at *6, 2002 Del.Super. Lexis 103, at *16 (Del.Super.Ct. Mar. 14, 2002)(citing O'Connor v. Diamond State Tel. Co., 503 A.2d 661, 663 (Del.Super.1985)).

17. We refer to these three exceptions as the "recognized exceptions."

18. O'Connor, 503 A.2d at 663 (citing Williams v. Cantera, 274 A.2d 698, 700 (Del.Super.1971)); Seeney v. Dover Country Club Apartments, Inc., 318 A.2d 619, 621 (Del.Super.1974).

19. Figgs v. Bellevue Holding Co., 652 A.2d 1084, 1092 (Del.Super.1994) (quoting Rabar v. E.I. duPont de Nemours & Co., 415 A.2d 499, 505 (Del.Super.1980)).

20. Bryant v. Delmarva Power & Light Company, 1995 WL 653987, at *8, 1995 Del.Super. Lexis 438, at *23 (Del.Super.Ct. Oct. 2, 1995) (citing Rabar, 415 A.2d at 506).

exceptions. She did not provide any written analysis or citations supporting her position and merely cited to undescribed "public policy issues ... discussed at oral argument." Moreover, neither party has presented any support for the trial judge's new standard. Therefore, because of the lack of support for the trial judge's position and because it is contrary to established Delaware Law, we hold that the trial judge erred by instructing the jury on the "obvious safety hazard exception."

■ Further, because the trial judge granted Handler summary judgment on the duties it may have owed Tlapechco under existing Delaware law, the error clearly affected the outcome of the trial. A party has an "unqualified right to have the jury instructed with a correct statement of the substance of the law."[21] Here, the jury was permitted to find that Handler had a duty based on an inaccurate statement of the law. Put simply, Handler was found liable for breaching a duty that

does not exist in Delaware, and therefore, we must reverse the judgment of the Superior Court.[22]

**B. Tlapechco's cross claims**

■ We now must consider Tlapechco's cross claims.[23] We first consider whether the trial judge erred by granting summary judgment to Handler on the recognized exceptions to the general rule that general contractors owe no duty to an independent contractor's employees.[24] We review "motions for summary judgment under a *de novo* standard of review."[25] We review "*de novo* the Superior Court's grant of summary judgment both as to facts and law to determine whether or not the undisputed facts, viewed in the light most favorable to the opposing party, entitle the moving party to judgment as a matter of law."[26] Moreover, we also address Tlapechco's claim that the trial judge abused her discretion by failing to admit the fact

21. *Russell v. K–Mart Corp.*, 761 A.2d 1, 5 (Del.2000).

22. Tlapechco suggested that the trial judge's standard was "merely a logical expression of current law applied to the facts of this case." We disagree and cannot find that the "obvious safety hazard exception" merely applies Delaware Law to the facts of this case because the "obvious safety hazard exception" is flatly contrary to well-established Delaware common law.

23. We must address Tlapechco's cross claims to determine if the case should have been submitted to the jury on one or more of the three "recognized exceptions."

24. Tlapechco also cites *Marks v. Messick & Gray Construction, Inc.*, 2000 WL 703657, 2000 Del.Super. Lexis 131 (Del.Super.Ct. Apr. 18, 2000), and claims, in a conclusory fashion, that the trial judge erred by not recognizing that Handler had a duty to Tlapechco because Handler created a dangerous condition. The facts in *Marks* are easily distin-

guishable from this case. In *Marks*, the plaintiff was injured when a forty-pound angle iron fell from a demolition area directly above the plaintiff's work area and struck him. The trial judge found that there was a genuine issue of material fact about whether the landowner actively created a dangerous condition because the landowner continued to schedule a demolition subcontractor's work directly over the head of a painting subcontractor, despite the fact that both subcontractors voiced concern about the safety of scheduling the work in that manner. In *Marks*, it was significant that the plaintiff claimed that the landowner "actively created a dangerous condition that would not have normally existed under a painting contract." Here, we cannot find that Handler actively created a dangerous condition that would not have normally existed merely because it scheduled work to be done around the "open walkway" while it knew the safety railing was down.

25. *Motorola, Inc. v. Amkor Tech.*, 849 A.2d 931, 935 (Del.2004).

26. *Id.*

that Handler had safety rails installed after the accident.

### 1. Tlapechco's claim that the trial judge erred by finding that Handler did not retain active control over the manner and method of work on Lot 361.

■ At the close of the evidence, the trial judge found "as a matter of law that Handler did not retain active control over the manner in which the subcontractor's work was carried out and the methods used." Tlapechco now claims on appeal that the trial judge erred in so concluding.

■ A general contractor has a duty to protect an independent contractor's employee when the general contractor retains active control over the manner and methods of performing the contract work.[27] "While the concept of control is an elastic one, it is not inferred from mere retention by the owner or contractor of the right to inspect or to supervise the work for conformity with the contract."[28] "Instead, the right to control must go directly to the manner or methods used by the independent contractor in his performance of the delegated tasks."[29]

■ Moreover, in the absence of active control over the manner and method of the performance of the contract work, a general contractor "may still be liable to some extent if he retained sufficient *control over part of the work*."[30] The Restatement is consistent with Delaware law. The Restatement (Second) of Torts § 414 (1965), provides:

> One who entrusts work to an independent contractor, but who retains the *control of any part of the work*, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. (emphasis added)

The comments to this section further elaborate on the control necessary to subject the general contractor to liability:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of *control over the manner in which the work is done*. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.[31]

Tlapechco contends on appeal that even in the absence of active control over the manner and method of the painting work, Handler still owed Tlapechco a duty because Handler retained sufficient control over part of the work; in particular, Han-

---

**27.** *Bryant v. Delmarva Power & Light Company*, 1995 WL 653987, at *8, 1995 Del.Super. Lexis 438, at *23 (Del.Super.Ct. Oct. 2, 1995).

**28.** *Jiz Shu Li v. Capano Builders, Inc.*, 1999 WL 191570, at *3, 1999 U.S. Dist. Lexis 4427, at *9 (D.Del. March 26, 1999) (citing *O'Connor*, 503 A.2d at 662).

**29.** *O'Connor*, 503 A.2d at 663 (quoting *Seeney*, 318 A.2d at 621).

**30.** *Bryant*, 1995 WL 653987, at *8, 1995 Del.Super. Lexis 438, at *23.

**31.** Restatement (Second) of Torts § 414 cmt. c (1965).

dler retained sufficient control over safety around the "open walkway." Tlapechco suggests that there is "overwhelming evidence that Handler controlled safety in the work area," and at a minimum, there is a genuine issue of material fact about whether Handler controlled safety in the work area. Handler contends that it did not control the manner or method of safety precautions around the "open walkway" and merely had a supervisor on site to coordinate and direct the subcontractors' work and to inspect the premises to ensure that contractual obligations were fulfilled.

Viewing all the evidence in the light most favorable to Tlapechco, we find no genuine issue of material fact in dispute and find, as a matter of law, that Handler is entitled to summary judgment on this issue because no evidence suggests that Handler controlled the manner and method of safety. Esperanza provided all of the equipment necessary for performance of the contract, controlled the assignment of workers, controlled the painting process, and paid Tlapechco. Nothing suggests that Handler retained a right of supervision that prohibited Esperanza from performing the work in its own way. Put simply, Esperanza was free to do the work any way it wanted.

Tlapechco points to the following to suggest that Handler controlled safety: Handler had safety talk instructions discussing fall protection around "open walkways," Handler contracted for the installation of the safety rail and provided lumber for the safety rail, and testimony of Handler's employees suggesting that it was a site supervisor's duty to see that the safety railing was installed. Tlapechco's argument is misplaced because none of the evidence

suggests how Handler controlled the manner and method in which Esperanza worked. Rather, this evidence suggests that Handler may have voluntarily assumed a duty to install safety railings (an issue we discuss in more detail below). Therefore, because there is no genuine issue of material fact in dispute about whether Handler actively controlled the manner and method of any of Esperanza's work, we affirm the trial judge's grant of summary judgment on this issue.

2. **Tlapechco's claim that the trial judge erred by concluding as a matter of law that Handler did not voluntarily assume the responsibility for implementing safety measures.**

■■■ Tlapechco contends that the trial judge erred by finding, as a matter of law, that Handler did not voluntarily assume responsibility for workplace safety. Particularly, Handler contends that there was a genuine issue of material fact in dispute about whether Handler voluntarily assumed responsibility for safety around the "open walkway."

■■■ Under Delaware Law, "those who have responsibility for workplace safety must take reasonable measures to ensure the safety of those at the worksite." [32] "A duty to ensure workplace safety can be imposed upon a party who '[voluntarily], by agreement or otherwise, undertakes responsibility for implementing required safety measures.' " [33] "Where breach of the assumed duty causes injury to a worker, the responsible party can be held liable

**32.** *Jiz Shu Li v. Capano Builders, Inc.*, 1999 WL 191570, at 4, *1999 U.S. Dist. Lexis 4427*, at \*14 (citing *Bryant*, 1995 WL 653987, at \*7, 1995 Del.Super. Lexis 438, at \*25–26).

**33.** *Jiz Shu Li v. Capano Builders, Inc.*, 1999 WL 191570, at \*4, *1999 U.S. Dist. Lexis 4427*, at \*14 (quoting *Figgs*, 652 A.2d at 1092 (Del.Super.1994)).

under the traditional principles of negligence law." [34]

When she revisited her earlier decision granting Handler's motion for summary judgment, the trial judge stated: "I conclude as a matter of law, considering the facts in the light most favorable to plaintiff, that at most, Handler assumed some responsibility for the safety of the subcontractor employees, but did not assume total responsibility." We understand this statement to reflect her belief that Handler was entitled to summary judgment unless it assumed sole responsibility for the safety for subcontractor employees. We disagree because if Handler assumed any responsibility for subcontractor employee safety, it had an obligation to fulfill that duty with care.

The voluntary assumption of safety exception to the general rule that contractors are not liable to subcontractor employees was derived from the *Restatement of Torts (Second)* § 324A (1965). The Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or

> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Clearly this section provides for liability if one undertakes a duty and does not use reasonable care to carry out the assumed duty. Therefore, simply because Handler may have only assumed some responsibility for workplace safety does not relieve it of liability. Whatever duty Handler did assume, it had to carry out reasonably. If it did not carry out its duty reasonably, and the breach of the duty was the cause of Tlapechco's injuries, Handler would be liable.

In any event, there is at least a genuine issue of material fact in dispute with respect to this issue. Handler contracted with Guzman to install a temporary safety railing and Handler provided the lumber for the railing. Two weeks before Tlapechco's fall, Paul Handler, Vice President of Handler, had a safety instruction talk with his employees, including Marty Dugan,[35] and discussed "fall" protection. The discussion included information in the "National Association of Homebuilders Tool Box Safety Talks Section 3: Fall Protection worksheet." The worksheet provided:

> One problem with guardrail systems is with drywalling operations. Be sure the drywallers have not taken down the guardrails during their work. They can still protect themselves and you while doing their jobs. *The easiest way* to protect everyone is to install the upright away and detached from the wall, that way you can still get to the wall to do the drywalling.

Moreover, Paul Handler acknowledged in his deposition that the site supervisor had a duty to correct any unsafe conditions

---

**34.** *Jiz Shu Li v. Capano Builders, Inc.*, 1999 WL 191570, at *4, 1999 U.S. Dist. Lexis 4427, at *14 (citing *Bryant*, 1995 WL 653987, at *7, 1995 Del.Super. Lexis 438, at *25–26).

**35.** Dugan was the site supervisor at Legends where Tlapechco's accident occurred.

regarding "falls or guardrails" and that he gave safety talks to ensure that his employees would recognize hazardous conditions when they see them.[36] Dugan[37] and a former Handler site supervisor[38] also both acknowledged a duty to maintain a safety railing.[39] Finally, Handler had a safety railing installed after Tlapechco's fall.[40]

Conversely, the Handler–Esperanza contract provided that Esperanza was required to "take reasonable safety precautions with respect to [its] performance [of the contract work] and comply with local, county, state, federal, and OSHA requirements . . . and intend[ed] to comply with all safety requirements . . . pertinent to [its] trade." Further, the contract required Esperanza to notify Handler if the conditions were inadequate.[41] Viewing all inferences in the light most favorable to Tlapechco, we find that a genuine issue of material fact is in dispute about whether Handler voluntarily assumed responsibility for safety around the "open walkway" because a reasonable jury could find that Handler assumed responsibility for safety around the "open walkway" based on the

36. Paul Handler testified in his deposition as follows:

> Q: .... the reason you give fall protection about guardrails and things, those talk, is so that your site supervisor and your employees will recognize hazardous conditions when they see them; isn't that fair to say?
> A: Yes.
> Q: And part of Dugan's job on the job site, do you agree with me, part of Dugan's job was to see if there were any unsafe conditions regarding falls or guardrails, that those conditions would be rectified; is that correct?
> A: If he comes across them.

37. Dugan's testimony was as follows:

> Q: If you saw them [safety railings] down as a site supervisor what was your obligation?
> A: To have them put up and/or find out who took them down possibly and have them put them up.

38. Gene McLaughlin, a former Handler site supervisor, testified:

> Q: If you saw an unprotected balcony [or an "open walkway"] in one of the houses that you were site superintendent for just like this balcony, what would you have done?
> A: I would have had the framer install a safety railing immediately.

39. We recognize that we are citing to testimony adduced at trial and a summary judgment motion is decide before trial. It is of no significance here because Handler conceded that "there are no new facts at this trial that were not raised at summary judgment." This statement concedes that Dugan's and McLaughlin's depositions, which were considered for the purpose of summary judgment, are consistent with their testimony at trial. Moreover, the depositions are in fact consistent with the above-cited trial testimony.

> McLaughlin testified in his deposition:
> Q: In other words, if you walk into a house like the one at The Legends on 361 and you see an exposed walkway which has nothing on it, no railings, no anything—
> A: I'm saying something.
> Q: And is it your responsibility to say something?
> A: Personally, I think it is just because of common sense.

40. Tlapechco fell on Saturday. Handler instructed a subcontractor to install safety rails where Tlapechco fell on Monday morning. It is worth noting that this evidence can be considered for the purpose of proving that Handler voluntarily assumed responsibility for safety around the "open walkway." We discuss this issue in more detail below.

41. The contractual language is just one fact considered when determining if a general contractor voluntarily assumed responsibility for safety. *Rabar,* 415 A.2d at 508 (finding a genuine issue of material fact about whether general contractor/landowner voluntarily assumed responsibility for safety even though the subcontractor contractually agreed that it

above facts.[42]

### 3. Tlapechco's claim that the trial judge erred by failing to find that Handler owed a duty to Tlapechco because Handler retained possessory control over the work area during work.

■ Tlapechco now claims on appeal that the trial judge erred by granting Handler summary judgment on the issue of retention of possessory control because there was a genuine issue of material fact in dispute about whether Handler retained possessory control over the work area during work. Handler claims that no genuine issue of material fact was in dispute, that Esperanza had exclusive control over the work area, and therefore, that the trial judge was correct in granting summary judgment.

A general contractor will have a duty to protect the employees of an independent contractor when the general contractor retains "possessory control over the work premises *during the work.*"[43] In other words, "those found to be in control of a defined work area are under a common law duty to make reasonable efforts to provide for the safety of workers in the controlled area."[44] This law was derived from the Restatement (Second) of Torts § 422(a) (1965), which provides:

A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

(a) while the possessor has retained possession of the land *during the progress of the work* . . .

Here, Handler gave Esperanza the keys to Lot 361 and Esperanza's employees had exclusive access to Lot 361 while they were painting. Moreover, no Handler employees were at Lot 361 when Tlapechco fell from the open walkway.[45] Therefore, the trial judge did not err by granting summary judgment on this issue because as a matter of law, in viewing the facts in the light most favorable to Tlapechco, Handler did not exercise possessory control over the work area while Esperanza completed its contractual obligations.

### 4. Tlapechco's claim that the trial judge abused her discretion by failing to admit the fact that Handler had safety rails installed after the accident.

■ Tlapechco contends that the trial judge abused her discretion when she con-

---

"would be responsible for all safety regulation compliance.").

42. We recognize that "whether a duty exists is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined by the court." *Bryant,* 1995 WL 653987, at *2, 1995 Del.Super. Lexis 438, at *6 (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 37, at 236 (5th ed. 1984)). The jury, however, must decide whether the facts support the application of the duty in a particular case.

43. *Bryant,* 1995 WL 653987, at *8, 1995 Del.Super. Lexis 438, at *23. (citing *Rabar,* 415 A.2d at 506).

44. *Id.*

45. Tlapechco suggests that Handler "controlled safety in the work area" because Handler gave safety instructions to its supervisors concerning fall protection and because of Handler's conduct in constructing railings before and after the fall. Tlapechco's argument misses the mark. His arguments are more properly raised about whether Handler voluntarily assumed the duty to keep the area safe.

cluded that the fact that Handler had temporary safety rails installed after the accident was inadmissible. Tlapechco claims that the evidence was admissible under Delaware Rule of Evidence 407. D.R.E 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. *This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control or feasibility of precautionary measures, if controverted, or impeachment.* An event includes the sale of a product to a user or consumer.

Tlapechco contends that the post-accident installation of the safety rail was admissible to show that Handler controlled the work area or voluntarily assumed safety around the "open walkway." While we find that the trial judge did not abuse her discretion at trial, the result at the new trial should be different.

Before trial, the trial judge granted summary judgment in favor of Handler on the recognized exceptions, including active control over the manner and method and voluntary assumption of a responsibility for safety. Because of that ruling, whether Handler voluntarily assumed responsi-

bility for safety and whether it actively controlled the manner and method of work were no longer issues, and Tlapechco was not permitted to admit the later remedial measure for those purposes. In other words, the trial judge had no reason to admit the later remedial measure other than for the impermissible purpose of proving negligence.

At the new trial, however, the result should be different. We now rule that there are genuine issues of material fact in dispute about whether Handler voluntarily assumed responsibility for safety. Certainly the level of control Handler exerted around the walkway is relevant to demonstrate whether Handler voluntarily assumed responsibility for safety. D.R.E. 407 explicitly states that a later remedial measure will be admissible to demonstrate control, and therefore, the fact that Handler had a safety rail installed after Tlapechco's accident is admissible for that purpose.

The judgment of the Superior Court is REVERSED, and REMANDED for a new trial.