Pablo Cesar URENA, Plaintiff Below, Appellant,

v.

CAPANO HOMES, INC., Defendant Below, Appellee.

No. 655, 2006.

Supreme Court of Delaware.

Submitted: May 9, 2007.
Decided: July 17, 2007.

I. Barry Guerke, Esquire, of Parkowski, Guerke & Swayze, P.A., Dover, Delaware; and Mark J. Lewinter, Esquire and James A. Keating, Esquire of Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C., Philadelphia, Pennsylvania, for Appellant.

David G. Culley, Esquire, of Tybout, Redfearn & Pell, Wilmington, Delaware for Appellee.

Thomas C. Crumplar, Esquire and David A. Arndt, Esquire of Jacobs & Crumplar, P.A., Wilmington, Delaware; Christopher J. Curtin, Esquire and William W. Erhart, Esquire, Co–Chairs of Delaware Trial Lawyers Association Amicus Committee, Wilmington, Delaware, Amicus Curiae.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

BERGER, Justice.

In this appeal, we consider the extent of a general contractor's liability for injuries sustained by an independent contractor's employee. The injured employee claims that the general contractor is liable because: 1) it undertook responsibility for implementing safety measures; and/or 2) it negligently selected the independent contractor. We hold that a general contractor who supervises job site safety conditions by making checklists, reporting

safety issues to the independent contractor, and even terminating the independent contractor if the safety issues persist, has not assumed a duty to protect the safety of the independent contractor's employees. On the second claim, we hold that the Restatement (Second) of Torts (1965) § 411 does not support a cause of action in favor of the employees of an independent contractor based on the general contractor's alleged failure to exercise due care in selecting the independent contractor. Accordingly, we affirm the trial court's grant of summary judgment to the general contractor.

### Factual and Procedural Background

On January 21, 2003, Pablo Urena was working on the roof of a new home, at the Preserve of Lafayette Hills, when he fell and suffered serious injuries. At the time of the accident, Urena was not wearing a safety harness, although he owned one, and it was at the job site. Urena sued Muirfield Associates, LLC, the owner of the construction site property; Capano Homes, Inc., the general contractor/construction manager; and Mun Seok Lee, t/a Rising Sun Contractors Co., the roofing subcontractor.

Capano provided oversight for all construction at the Preserve. Charles Chambers was the site superintendent. He scheduled the subcontractors' work; supervised Capano's employees; maintained quality control; completed punch list items; and handled the paperwork and payroll. Chambers acknowledged that Capano had "shared responsibility" for job site safety, which included compliance with the Occupational Safety & Health Act of 1970 (OSHA)[1].

When construction began, in 1999, Capano hired E. Martin Construction to do the roofing work. According to Chambers, the roofers working for Martin did not wear their fall protection unless Chambers "screamed and hollered" and threatened Martin with dismissal. Chambers went to his supervisor, Ray Worrall, several times to advise him that the Martin roofers were not listening to Chambers about wearing fall protection. Ultimately, Martin was replaced because Martin was unable to maintain the work schedule.

Before contracting with Rising Sun, Worrall checked with other roofing contractors and supply companies, and learned that Rising Sun's workmanship was "normal quality." Worrall did not specifically inquire, and did not learn, that Rising Sun had been involved in workplace accidents and had been cited for OSHA violations. Capano did investigate Rising Sun's financial responsibility and insurance. On November 10, 2002, Capano contracted with Rising Sun for the supply and installation of roof shingles, vinyl siding and related products at the Preserve. The contract provided, in part, that: 1) Rising Sun would be in compliance with all state, local and federal codes and regulations (including OSHA); 2) it was an independent contractor solely responsible for all of its employees and all materials and equipment brought to the job site; and 3) it would obtain the specified insurance for general liability and workers' compensation.

Lee, the owner of Rising Sun, testified that he subcontracted with two partners, Hernandez and Miguel Romero, for the roofing work. In addition, Lee hired Jason Son to be his field supervisor. Lee admitted that Chambers contacted him or Son several times to complain about the workers' failure to wear fall protection. During one such call, Chambers told Son that, if the problem was not resolved, Rising Sun would lose the job. In response, Son im-

---

1. 29 U.S.C. §§ 651 et seq.

mediately notified Romero that Romero's workers must wear their safety harnesses.

Urena was employed by Hernandez. On the day of the accident, Urena had put down 2 × 4s along the roof line as protection against a fall. He had a safety harness in the van, at the job site, but never wore it. He preferred not to use the safety harness because it was uncomfortable. Chambers acknowledged that another problem with the harnesses was that the roofers generally are paid by the piece and wearing the harnesses slowed them down. The accident occurred when a package of shingles slipped out of Urena's hands and slid down the roof, breaking apart the 2 × 4s. Urena also slipped, slid past the break in the 2 × 4s, and fell off the side of the roof.

The Superior Court granted summary judgment in favor of Muirfield and Capano. Urena obtained a jury verdict against Rising Sun. Urena only appeals the Capano judgment.

### Discussion

■ Urena first argues that the trial court erred in granting Capano summary judgment on the claim that Capano had assumed a duty to provide for Urena's safety. He relies on *Handler Corp. v. Tlapechco*[2] for the proposition that a general contractor may be held liable to independent contractors' employees if it assumes "some responsibility" for workplace safety. Urena contends that there is a triable issue of fact, under that standard, inasmuch as Chambers admitted to sharing some responsibility for job site safety.

In *Handler*, the independent contractor's employee was painting a second floor balcony when he stepped backwards and fell to the floor below. The general contractor had contracted to install a safety rail around the balcony, and provided the lumber for the rail. On the day of the accident, however, the safety rail was missing. This Court summarized the law governing general contractors in these circumstances:

> The common law of Delaware regarding a general contractor's duty to an independent contractor's employee is well-established. "Generally, an owner or general contractor does not have a duty to protect an independent contractor's employees from the hazards of completing the contract." There are, however, recognized exceptions to this general rule in Delaware common law. Specifically, a general contractor has a duty to protect an independent contractor's employees when the general contractor: (1) actively controls the manner and method of performing the contract work; (2) voluntarily undertakes the responsibility for implementing safety measures; or (3) retains possessory control over the work premises during work.[3]

Because Handler had contracted to build the safety rail, and a site supervisor testified that he would have had one installed immediately if he had seen an unprotected balcony, a reasonable jury could conclude that Handler assumed a duty to provide safety measures for those working on the balcony. Thus, this Court reversed the trial court's grant of summary judgment in favor of Handler.

The record facts in this case do not support a similar result. Capano did not install or otherwise implement any safety measures at the job site. The only evidence of any assumption of responsibility for safety is:

> 1) Chambers admitted that Capano shared responsibility for overseeing job site safety;

---

**2.** 901 A.2d 737 (Del.2006).

**3.** 901 A.2d at 737 (Footnotes omitted.).

2) Chambers told the roofing contractors, on more than one occasion, that the roofers should be wearing fall protection, and threatened one contractor with dismissal for failure to do so;

3) Chambers reported the contractors' failure to use fall protection to his supervisor, who said that he would "handle it;"

4) Chambers filled out two safety check lists; and

5) Capano produced a document entitled "Safety Program," which sets forth a policy, "to provide a safe and healthful place of employment for all [of Capano's] employees." [4]

These facts establish only that Capano supervised the job site, as part of its overall responsibility for the project. When Chambers noticed a problem, he reported it to the independent contractor and told the contractor to correct the problem. At no point did Chambers, or any other Capano employee, intervene and either provide harnesses to Rising Sun's roofers or directly require them to wear their own harnesses. Thus, there are no facts from which a jury could conclude that Capano undertook responsibility for implementing safety measures, and the trial court correctly granted summary judgment.

■ Urena also argues that Capano assumed liability for his injuries because it negligently selected Rising Sun to perform the roofing work. This claim is based on § 411 of the Restatement (Second) of Torts (1965), which provides:

§ 411 Negligence in Selection of a Contractor

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons.

Urena contends that employees of independent contractors should be considered "third persons" under § 411 because that result would promote industrial safety.

In other jurisdictions, most courts that have considered this question have concluded that employees of independent contractors have no "negligent hiring" claim. They offer several reasons.[5] First, employees, unlike members of the general public, are able to protect themselves from the risks of their work. Second, an employee's recovery for work-related injuries generally is limited to workers' compensation benefits. It would be "indefensible" if employees of an independent contractor could recover in tort against the general contractor, but employees of the general contractor were limited to workers' compensation.[6] The same anomaly would have the detrimental effect of encouraging contractors to use their own employees for hazardous work instead of hiring independent contractors with special skills. Finally, none of the illustrations to Section 411 include employees of an independent contractor as "third persons." We find the majority view persuasive, and hold that employees of independent contractors have no claim against general contractors for negligent hiring of the independent contractor.

---

4. Appellant's Appendix, A–345.

5. *See, e.g.: Camargo v. Tjaarda Dairy*, 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (2001); *Castro v. Serrata*, 145 F.Supp.2d 835 (S.D.Texas 2001); *Valdez v. Cillessen &*

*Son, Inc.*, 105 N.M. 575, 734 P.2d 1258 (1987); *Best v. Energized Substation Service*, 88 Ohio App.3d 109, 623 N.E.2d 158 (1993).

6. *Ray v. Schneider*, 16 Conn.App. 660, 548 A.2d 461, 466 (1988).

## Conclusion

Based on the foregoing, we affirm the Superior Court's entry of summary judgment in favor of Capano.