# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARLENA L. DAY,                      )
                                )
        Plaintiff,                        )
                                )
                                )  C.A. No. N15C-06-277 AML
     v.                                   )
                                )
WILCOX LANDSCAPING, INC.,            )
CARROW CONSTRUCTION, LLC and         )  TRIAL BY JURY DEMANDED
SLEEPY HOLLOW LAWN CARE &            )
LANDSCAPING, INC.,                   )
                                )
        Defendants,                       )
                                )

Submitted: November 18, 2016
Decided: February 28, 2017

## ORDER

## Defendants' Motions for Summary Judgment: GRANTED

1.      A common law rule in Delaware, known as the "continuing storm doctrine" and consistently applied over the last five decades, is that landowners act with reasonable care when they await the end of a storm before undertaking to remove snow and ice from their property. The plaintiff in this action was injured at her place of employment when she slipped on ice during a storm. In an effort to avoid what appears to be a straightforward application of the continuing storm doctrine, the plaintiff advances various theories that fundamentally are at odds with the doctrine and the public policy underlying it. In a nutshell, the question before

the Court is this: does the continuing storm doctrine apply even when a landowner retains a third party to clear snow and ice from the property? For the reasons that follow, I conclude the doctrine applies, and I therefore grant the defendants' motions for summary judgment.

## FACTUAL BACKGROUND

2. Except as otherwise noted, the following facts are not disputed. In October 2013, Sallie Mae, Inc. ("Sallie Mae") hired Defendant Wilcox Landscaping, Inc. ("Wilcox") to provide snow and ice removal services at Sallie Mae's Newark facility between November 2013 and April 2014.[1] Under Sallie Mae's contract with Wilcox, Wilcox was to clear snow and ice at a contractual rate, including removing snow "from the roadways and parking lots [consisting] of plowing, clearing, and salting these areas to allow tenants to exit from the property."[2] Wilcox in turn relied on its own independent contractors, Defendants Carrow Construction, LLC ("Carrow") and Sleepy Hollow Lawn Care & Landscaping, Inc. ("Sleepy Hollow," and together with Wilcox and Carrow, the "Defendants"), to provide snow and ice removal as directed by Wilcox for certain of Wilcox's clients. Specifically, Sleepy Hollow agreed to provide snow removal

---

[1] Pl.'s Resp. Br. Ex. F.
[2] *Id.* at ¶ 3.

services for Wilcox's accounts as directed by Wilcox, and Carrow similarly agreed to provide plowing, snow removal, and salting services as directed by Wilcox.[3]

3. The plaintiff, Marlena L. Day, was a Sallie Mae employee working at the company's Newark office building on January 21, 2014. That day, a winter storm began shortly after 9:00 a.m., bringing light-to-moderate snowfall to the area that continued through the day and into that night.[4] Ms. Day arrived at work shortly after 8:00 a.m. According to an expert retained by the Defendants, no snow or ice was present on the ground before the storm began that morning.[5] By 11:30 a.m., there was between a half-inch to one inch of snow on the ground.[6] The storm ended just before midnight, with approximately 11 inches of snow accumulating.[7]

4. In the late morning, Ms. Day decided to drive home before the weather and driving conditions worsened.[8] When Ms. Day walked outside, it was snowing, and the sidewalks around the building had been salted.[9] When she reached the parking lot, Ms. Day saw what appeared to be a sheet of ice.[10] Having

---

[3] Sleepy Hollow's Mot. Summ. J. Ex. A; Carrow's Mot. Summ. J. Ex. A.
[4] Sleepy Hollow's Mot. Summ. J. Ex. C, at 6.
[5] *Id.* Ms. Day has not identified any dispute as to this fact.
[6] *Id.* at 7.
[7] *Id.* at 6-7.
[8] Marlena L. Day Dep. 15, 17, 19.
[9] *Id.* at 18-19, 28, 82.
[10] *Id.* at 18.

3

no other way to get to her car, Ms. Day attempted to cross the ice, but fell after a few steps, injuring her right knee.[11]

5. Ms. Day filed a complaint against Wilcox alleging that her injuries proximately were caused by Wilcox's negligence in failing to (i) maintain the premises in a safe condition, (ii) inspect the premises for dangerous conditions, (iii) warn others of dangerous conditions that existed, and (iv) otherwise exercise reasonable care in discharging its contractual responsibility to clear the parking lot of snow and ice.[12] Ms. Day later amended her complaint to add Carrow and Sleepy Hollow as defendants. There is evidence from which a fact-finder reasonably could conclude that both Carrow and Sleepy Hollow worked at the Sallie Mae premises that day at Wilcox's direction. There is some dispute in the record regarding whether Sleepy Hollow or Carrow was responsible for plowing the lot.[13] It is undisputed that no salt was applied to the Sallie Mae parking lot until after the snow stopped and the parking lot was plowed completely.[14] All parties agree that both Sleepy Hollow and Carrow acted under Wilcox's oversight and that it was Wilcox who determined when to apply salt to the parking lot.[15]

---

[11] *Id.* at 18-20.
[12] D.I. 1.
[13] *See* Pl.'s Resp. Br. 9-10.
[14] William Shetzler, Jr. Dep. 46-47.
[15] *Id.* at 47.

6.    After discovery concluded, all three Defendants moved for summary judgment on the basis that the continuing storm doctrine precludes any finding that they breached a duty to Ms. Day.  The parties briefed and argued those motions.

**ANALYSIS**

7.    Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[16]  The question of whether a defendant owes a legal duty is a question of law that may be resolved on summary judgment.[17]  Although determining whether a duty is breached often is a factual question, there are circumstances under which a court may determine as a matter of law that no breach occurred.[18]

8.    When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[19]  The Court will accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts.  From those accepted facts[,] the [C]ourt will draw all rational

---

[16] Super. Ct. Civ. R. 56(c).
[17] *Handler Corp. v. Tlapechco*, 901 A.2d 737, 748-49 (Del. 2006).
[18] *Elder v. Dover Downs*, 2012 WL 2553091, at *2 (Del. Super. July 2, 2012).
[19] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).

inferences which favor the non-moving party."[20]  A party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.[21]  If the movant makes such a showing, the burden then shifts to the nonmoving party to submit sufficient evidence to show that a genuine factual issue, material to the outcome of the case, precludes judgment before trial.[22]

9.    The Defendants contend summary judgment is appropriate here because the continuing storm doctrine precludes any finding that the Defendants failed to act with reasonable care at the time Ms. Day was injured.  Ms. Day presents a number of arguments in opposition to the motions, which generally may be summarized as follows: (1) the continuing storm doctrine does not apply to independent contractors and should not be extended in that manner; (2) even if the doctrine applies to independent contractors, Wilcox assumed a contractual duty to maintain safe premises through snow and ice removal and those contractual duties define Wilcox's duties under tort law; (3) the Restatement (Second) of Torts § 324A imposes duties on the Defendants that they violated; and (4) Wilcox violated its duty to act with reasonable care by failing to prepare for the storm by pre-treating Sallie Mae's parking lot and sidewalks.  In essence, each of these arguments repackages the same contention: the Defendants owed duties to take

---

[20] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).

[21] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).

[22] *Id.*; *see also Brzoska*, 668 A.2d at 1363.

action before and during the storm and failed to discharge those duties. As explained below, I conclude Delaware law precludes such a finding and therefore grant the Defendants' motions.

## A. The continuing storm doctrine and independent contractors

10. Ms. Day first argues that the Defendants failed to exercise reasonable care in discharging their duty to clear the Sallie Mae property of natural accumulations of snow and ice. The landowner or occupant of a business property has a duty under Delaware law to "exercise reasonable care to keep the premises safe for all business invitees."[23] Where a dangerous condition exists on the land, which a landowner knows exists or upon reasonable inspection would discover, the owner has a duty to make that condition safe.[24] A landowner's duties in this regard apply to weather-related conditions, such that the landowner must "keep the premises reasonably safe from the hazards associated with natural accumulations of ice and snow."[25]

11. Under settled Delaware law, however, the continuing storm doctrine provides that, in the absence of unusual circumstances, a landowner is permitted to await the end of a storm and a reasonable time thereafter to remove snow and ice

---

[23] *Cash v. E. Coast Prop. Mgmt., Inc.*, 2010 WL 2336867, at *2 (Del. Super. June 8, 2010) (citing *Hamm v. Ramunno*, 281 A.2d 601, 603 (Del. 1971)).
[24] *Hamm*, 281 A.2d at 603.
[25] *Woods v. Prices Corner Shopping Ctr. Merch. Ass'n*, 541 A.2d 574, 577 (Del. Super. 1988).

from his property.[26] That doctrine, first adopted in Delaware in *Young v. Saroukos*,[27] consistently has been applied by Delaware courts for several decades to preclude any finding of liability for landowners on whose property someone is injured while a storm is ongoing.[28] The doctrine provides that a landowner does not breach his duty to act with reasonable care by waiting until the conclusion of a storm before beginning snow and ice removal efforts.[29]

12. In applying the continuing storm doctrine, Delaware courts also have held that a landowner who undertakes to clear public areas of snow or ice while the storm is ongoing does not lose the benefit of the doctrine and those efforts, even if unsuccessful, do not subject a landowner to liability.[30] As this Court reasoned in *Kovach v. Brandywine Innkeepers, L.P.*, it would contravene public policy to

---

[26] *Young v. Saroukos*, 185 A.2d 274, 282 (Del. Super. Oct. 24, 1962); *Elder*, 2012 WL 2553091, at * 2.

[27] 185 A.2d 274, 282 (Del. Super. Oct. 24, 1962).

[28] *See, e.g. Elder v. Dover Downs*, 2012 WL 2553091 (holding the defendant acted reasonably as a matter of law by waiting until storm ended before clearing property of snow and ice); *Cash*, 2010 WL 2336867 (granting summary judgment to defendants where plaintiff fell on ice that accumulated while storm was ongoing), *aff'd* 7 A.3d 484 (Del. Oct. 29, 2010) (TABLE); *Morris v. Theta Vest, Inc.*, 2009 WL 693253 (Del. Super. Mar. 10, 2009), *aff'd* 2009 WL 2246777 (Del. 2009) (concluding landowner acted reasonably as a matter of law by waiting until a storm ended before completely clearing entrances); *Kovach v. Brandywine Innkeepers, Ltd. P'ship*, 2001 WL 1198944 (Del. Super. Oct. 1, 2001).

[29] The Delaware cases applying the continuing storm doctrine refer interchangeably to a finding that no duty exists while a storm is ongoing and a finding that the duty to act with reasonable care was not breached. Although the distinction often is immaterial for purposes of applying the doctrine, in my view the better analysis is that a landowner's duty always exists, but that "reasonable care" does not require a landowner to clear the premises of ice and snow until a reasonable period after the storm ends. *See Elder*, 2012 WL 2553091, at *3-4; *Kovach*, 2001 1198944 at *2.

[30] *Morris*, 2009 WL 693253 at *2; *Kovach*, 2001 WL 1198944, at *2.

8

conclude landowners assumed a higher duty by attempting to remove snow and ice before a storm ended.

> Landowners should be encouraged to try to clear all public areas of snow and ice during and after snowstorms, if possible. Landowners should not fear legal liability for not clearing every inch of their property during an all-day snowstorm if they attempt to clear some public areas of snow . . . . To hold otherwise would be a disincentive to vigilant efforts by landowners to monitor and clear snow during snowstorms. Every landowner would choose to wait out a snowstorm rather than clear a path for fear of legal jeopardy. Such a fear would be a grave detriment to the public.[31]

13. Ms. Day acknowledges this general law, but argues the Defendants are not entitled to summary judgment on the basis of the continuing storm doctrine because they are not landowners but rather independent contractors retained by the landowner. This argument fails to recognize the basis for the rule and the policy underlying it. The continuing storm doctrine provides that a landowner, charged with undertaking reasonable efforts to remove ice and snow from property, acts reasonably by waiting to begin such efforts until a storm concludes, and that even voluntarily undertaking such efforts during the storm does not alter the doctrine's application. The doctrine is intended not only to shield landowners from repeatedly subjecting themselves to the elements and dangerous conditions in order to clear property, but also to encourage landowners to make an effort to clear public areas during a storm without fear of incurring liability where there

---

[31] *Kovach*, 2001 WL 1198944 at *2.

otherwise would be none.[32] In contrast, Ms. Day's argument would create an inconsistent application of the reasonable care standard under which landowners who undertake their own snow and ice removal efforts act reasonably by waiting to do so until the end of a storm, but third parties retained to perform the work on landowners' behalf face potential liability by waiting or by engaging in incomplete or unsuccessful clean-up efforts during the storm. Ms. Day offers no reasoned argument supporting such a distinction, nor is any apparent to me. The conclusion Ms. Day champions would contravene the intent of the continuing storm doctrine and likely would chill the willingness of contractors to undertake clean-up efforts during a storm. That result would be neither in the interest of the public nor consistent with the purpose of the doctrine.

14. Ms. Day's argument that the doctrine should not extend to independent contractors also is inconsistent with binding case law applying the doctrine to third parties retained by a landowner. In *Cash*, this Court applied the doctrine to both the landowner and a third party retained by the landowner to engage in snow and ice removal services.[33] That decision was affirmed on appeal

---

[32] *See Young*, 185 A.2d at 282; *Cash*, 2010 WL 2336867; *Elder*, 2012 WL 2553091.

[33] *Cash*, 2010 WL 2336867. Ms. Day argues *Cash* is distinguishable because the third party in question in *Cash* was a maintenance company in an agency relationship with the property owner. While arguing that the principal-agent relationship is distinct from that involving an independent contractor, Ms. Day does not explain why that distinction should alter the analysis regarding whether the continuing storm doctrine applies. As explained above, the reason for the doctrine and the public policy supporting it render immaterial the distinction Ms. Day draws.

by the Delaware Supreme Court and is supported by both logic and public policy.[34] Under the continuing storm doctrine, the Defendants did not breach their duty to Ms. Day as a matter of law.

## B. The significance of the contracts

15. Ms. Day next argues that, even if the continuing storm doctrine applies to independent contractors, Wilcox nevertheless owed Ms. Day a duty under the contract between Wilcox and Sallie Mae. Ms. Day points specifically to the language in the contract requiring Wilcox to clear parking lots and roadways to allow tenants to exit those areas. This argument is a slightly reworked version of Ms. Day's position that the continuing storm doctrine does not apply to independent contractors and it fails for largely the same reasons. By concluding that third parties hired by landowners are covered by the continuing storm doctrine, the Court, consistent with the decision in *Cash*, effectively has concluded that third parties are entitled to await the end of the storm before discharging their contractual duty to clear the property, and that voluntarily undertaking efforts to clear property before the storm ends should not subject a landowner or their contractor to liability. Indeed, the only duty the Defendants owed to Ms. Day was one arising from the contract; they had no common law duty to undertake efforts to clear the property either during or before the storm. Accordingly, Ms. Day's

---

[34] *Cash,* 7 A.3d 484.

11

attempt to draw a distinction between the Defendants' common law duty and their contractual duty is unconvincing.

## C. The effect of Restatement Section 324A

16. Ms. Day further attempts to distinguish her case from a straightforward application of the continuing storm doctrine by arguing that the Restatement (Second) of Torts § 324A creates a new or heightened duty owed by the Defendants under the circumstances of this case. That Section provides, in pertinent part:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm *resulting from his failure to exercise reasonable care to protect his undertaking*, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> \*     \*     \*
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[35]

17. Again, Ms. Day's reliance on Section 324A to circumvent the continuing storm doctrine ignores the nature of that doctrine. Section 324A is premised on a failure to exercise reasonable care. The continuing storm doctrine provides that a person who owes a duty to remove accumulations of snow and ice from property acts with reasonable care by waiting until the end of a storm to do so

---

[35] Restatement (Second) of Torts § 324(A) (1965) (emphasis added).

12

or by making incomplete efforts to clear the property during the storm. That is, as a matter of law in Delaware, the Defendants acted with reasonable care by beginning their snow removal efforts during the storm, even if those efforts were ineffective or may have contributed to Ms. Day's accident.

18. Ms. Day's remaining arguments are unmoving. She contends that, even if the continuing storm doctrine applies, the Defendants acted negligently by failing to undertake *pre-storm* efforts to treat Sallie Mae's parking lot to prevent the accumulation of snow and ice. Ms. Day can point to no common law doctrine requiring a landowner to take "reasonable" efforts to prevent snow or ice from accumulating. The continuing storm doctrine provides that it is reasonable to wait a reasonable time after a storm ends before removing snow and ice; finding that a landowner nonetheless must make efforts to prevent the accumulation of snow and ice would swallow the rule. Even if, however, the Court concluded that a *landowner* owed such a duty, nothing in Sallie Mae's contract with Wilcox provided or even permitted Wilcox to undertake pre-storm efforts. Because the Defendants owed no duties to Ms. Day outside those undertaken in the contract, her argument about pre-storm efforts is a *non sequitur*. Similarly, I find unconvincing Ms. Day's contention that "public policy dictates that Wilcox be held accountable for failing to fulfill its obligations under the Sallie Mae contract" because Wilcox "was paid to perform a service" and should not be permitted to

"escape its contractual responsibilities by simply arguing that it was snowing." To the contrary, for the reasons explained above, the purpose of the continuing storm doctrine and the policy behind it strongly support its application in this case.

For the foregoing reasons, the Defendants' Motions for Summary Judgment are **GRANTED. IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Joseph J. Rhoades, Esquire
          Christopher T. Logullo, Esquire
          Colin M. Shalk, Esquire
          Susan List Hauske, Esquire

14