# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN RE: ASBESTOS LITIGATION

|  |  |  |
|---|---|---|
| WERNER RATH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N17C-08-228 ASB |
| 3M COMPANY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Submitted: March 27, 2019
Decided: April 18, 2019

*Upon Defendant Delmarva Power & Light Company's*
*Motion for Summary Judgment,*
**GRANTED.**

*Upon Defendants Four Star Oil & Gas Company, TRMI-H LLC, and*
*Texaco Inc.'s Motion for Summary Judgment,*
**GRANTED.**

*Upon Defendant Sunoco (R&M), LLC's Motion for Summary Judgment,*
**GRANTED.**

Thomas C. Crumplar, Esq., Jacobs & Crumplar, P.A., Wilmington, Delaware; Donald P. Blydenburgh, Esq. and Patrick I. Andrews, Esq. (*argued*), Levy Konigsberg, LLP, New York, New York. *Attorneys for Plaintiff.*

Robert S. Goldman, Esq. (*argued*) and Lisa C. McLaughlin, Esq., Phillips, Goldman, McLaughlin & Hall, P.A., Wilmington, Delaware. *Attorneys for Defendant Delmarva Power & Light Company.*

James F. Harker, Esq. (*argued*), Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Wilmington, Delaware. *Attorney for Defendants Four Star Oil & Gas Company, TRMI-H LLC, and Texaco Inc.*

Francis Gondek, Esq. and Nicholas E. Skiles, Esq. (*argued*), Swartz Campbell LLC, Wilmington, Delaware. *Attorneys for Defendant Sunoco (R&M), LLC.*

**MEDINILLA, J.**

2

# INTRODUCTION

This is an asbestos case where the Court is asked to consider whether landowner defendants owe a duty of care to an employee of a contractor who alleges exposure to asbestos while working at their various industrial sites.[1] Werner Rath[2] ("Rath") filed his respective claims against Delmarva Power & Light Company ("DP&L"), Four Star Oil and Gas Company, TRMI-H LLC, and Texaco Inc. ("Getty"), and Sunoco (R&M), LLC ("Sunoco") (collectively "Defendants"). Defendants move for summary judgment under Superior Court Civil Rule 56 arguing no duty is to owed him as a matter of law. For the reasons stated below, Defendants' Motions for Summary Judgment are **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Factual Background*[3]

Rath worked as a career union carpenter from 1968 until his retirement in 1995. During this time, he was hired by Catalytic, Inc. ("Catalytic") to work at multiple locations in Delaware. These locations include, but are not limited to the

---

[1] DP&L, Getty, and Sunoco each raised substantially the same arguments in their Motions and at oral argument. For this reason, the Court consolidated these Motions into this ruling.

[2] Mr. Rath passed away on March 14, 2019. As of the date of this ruling, Mr. Rath's estate has not yet been substituted as the plaintiff.

[3] The facts are taken from Rath's two depositions; Video Deposition of September 28, 2017 and Discovery Deposition of September 28 and 29, 2017. The parties provided exhibits of various portions of the Video and Discovery Depositions. For ease of reference, the Court will refer the them as either Video Deposition or Discovery Deposition.

DP&L facility in Delaware City,[4] the Getty oil refinery in Delaware City, and Sunoco's chemical plant in Claymont.[5] It is undisputed that while working at these facilities, Rath's sole responsibility was to erect and disassemble scaffolding, which included working with wood and metal materials.

Also undisputed is that all other employees with whom he worked, including insulators, pipefitters, electricians, boilermakers, welders, and laborers, were also employed by Catalytic. As to all three Defendants, Rath alleges that he was exposed to asbestos through the work of these other tradesmen working around him. Specifically, that his scaffolding work required him to come into contact with insulation and piping at Defendants' facilities.[6] After constructing the scaffolding, Rath would "stand-by" as the other trades worked around him, which included insulators and pipefitters. He was able to recall generally his work at these sites but was unable to identify the composition of the products or the maintenance history of the equipment with which the other trades worked.[7]

---

[4] DP&L argues that Rath did not work at its facility because Catalytic never contracted with DP&L to perform work on its premises. DP&L relies on two affidavits to support this argument. The Court assumes for purposes of these Motions that Rath worked at DP&L's facility while employed by Catalytic.

[5] Rath testified in this deposition that Sunoco's "SunOlin" facility was located in Marcus Hook, Pennsylvania, but his Complaint listed the facility in Claymont, Delaware. Sunoco notes that Rath's Complaint correctly states that the Sunoco's "SunOlin" facility was located in Claymont, Delaware.

[6] Video Deposition at 69-70.

[7] Discovery Deposition at 81, 145, 238.

Rath testified that the main facilities where he worked included the Getty refinery and the Sunoco plant.[8] As to Getty, he testified that he worked there from 1968 to 1995, although not every year during that time.[9] More specifically, he testified that he worked there in November and December during shutdowns, and he would generally work there for six to eight weeks.[10] He also testified that this work totaled one or two times a year, but it may have been as many as three times.[11] As to Sunoco, he stated that he worked at this plant beginning in 1968 until the late 1980s or early 1990s.[12] He worked at this plant approximately once or twice a year.[13] Rath was unable to specify how long he worked at the plant during a particular visit, testifying that it could range from one week to three weeks.[14] Although there are affidavits from DP&L and Catalytic representatives that Catalytic was not contracted to perform work at DP&L's Delaware City facility, Rath testified to working there from around 1969 or 1970 to 1995.[15] As to the three sites, Rath testified that the chain of command went from the landowner to the general foreman, and then to the

---

[8] Video Deposition at 13.

[9] Discovery Deposition at 121; Video Deposition at 14.

[10] Discovery Deposition at 74.

[11] Id. at 121.

[12] Id. at 140.

[13] Id. at 141.

[14] Id. at 143.

[15] Discovery Deposition at 213; Video Deposition at 62. DP&L initially raises the argument of whether Rath even worked at its facility. Since he testified to having worked at DP&L's facility and was able to identify DP&L as adjacent to and across the railroad tracks from the Getty refinery, for purposes of the present motion, the Court will assume Rath worked at DP&L's facility.

foreman to the workers.[16] He was not to communicate with supervisors from the various plants.[17]

### *Procedural Background*

Rath originally filed his Complaint alleging asbestos exposure from the manufacturers of asbestos-containing products and while working at various facilities including DP&L, Getty, and Sunoco throughout his career as a carpenter. Although his Complaint was amended multiple times to include additional claims and defendants, the claims against these Defendants remained the same. The specific allegations contained in three counts of the Third Amended Complaint are based on the following theories: "Premises Liability – Negligence," "Premises Liability/Ultra-Hazardous Activity," and "Premises Liability – Willful and Wanton Conduct."[18]

DP&L, Getty, and Sunoco filed their Motions for Summary Judgment. All responses and replies were filed by March 4, 2019. The Court held oral arguments on March 27, 2019. Having considered the arguments in the parties' filings and at oral argument on the Motions, the issue is ripe for decision.

---

[16] Video Deposition at 63, 64.
[17] *Id.* at 64.
[18] *See* Third Am. Compl. ¶¶ 68-94.

6

# STANDARD OF REVIEW

Delaware Superior Court Civil Rule 56 mandates the granting of summary judgment where the moving party demonstrates that "there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law."[19] "Once the movant meets its burden, then the burden shifts to the non-movant to demonstrate sufficiently an existence of one or more genuine issues of material fact."[20] Summary judgment will not be granted if there is a material fact in dispute or if it "seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[21] In considering the motion, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[22] However, the Court shall not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[23]

---

[19] Super. Ct. Civ. R. 56(c).

[20] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488 (Del. 1995). *See also* Super. Ct. Civ. R. 56(e); *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[21] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).

[22] *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Palmer*, 343 A.2d, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

[23] *In re. Asbestos Litig.*, 509 A.2d 1116 (Del. Super. 1986), *aff'd sub. nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987).

## CONTENTS OF THE PARTIES

The Defendant landowners argue that no duty of care is owed to Rath. They rely on a series of cases to include *In re Asbestos Litigation (Roca)*,[24] *In re Asbestos Litigation (Wooleyhan)* (*"Wooleyhan I"*),[25] *In re Asbestos Litigation (Wooleyhan)* (*"Wooleyhan II"*),[26] *In re Asbestos Litigation (Wenke)*,[27] and *In re Asbestos Litigation (Helm)*.[28] First, they argue that no duty is owed to an employee of an independent contractor if he alleges exposure to asbestos through the work of the same independent contractor and its employees.

In the alternative, the landowner Defendants argue that under the common law and the provisions of the Restatement (Second) of Torts (the "Restatement"), they are also entitled to relief because Rath has not presented evidence to establish the applicability of any exceptions that may expose the landowner to liability to survive summary judgment. Additionally, Defendants argue that to the extent Plaintiff is bringing a premises liability claim under § 343 of the Restatement, he has waived this claim, and/or is unable to prove the required elements as a matter of law.[29]

---

[24] 2002 WL 31007993 (Del. Super. Sept. 3, 2002).
[25] 2005 WL 6515534 (Del. Super. Feb. 15, 2005).
[26] 897 A.2d 767, 2006 WL 1214980 (Del. Apr. 12, 2006) (TABLE).
[27] 2007 WL 1651964 (Del. Super. May 31, 2007).
[28] 2007 WL 1651968 (Del. Super. June 25, 2007).
[29] Plaintiff failed to respond to this argument in its responsive pleadings, therefore this argument is deemed waived. Also, based on the rulings, The Court need not address it.

Rath similarly relies on these cases, as well as *Rabar v. E.I. duPont de Nemours & Co., Inc.*[30] but asks the Court to reach a different conclusion. He argues that he should be classified as a plaintiff for whom a duty of care is owed. He argues that he has presented evidence to trigger the applicability of the exceptions under the common law and the Restatement, which renders Defendants liable for his asbestos-related injuries.

## DISCUSSION

In Delaware, the general common law rule in landowner liability provides that "neither an owner nor general contractor has a duty to protect an independent contractor's employee from hazards created by the doing of the contract or the condition of the premises or the manner in which the work is performed[.]"[31] This general rule is similarly found in § 409 of the Restatement and states that "[e]xcept as stated in §§ 410-429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."[32] There are exceptions to the general rule found under the common law

---

[30] 415 A.2d 499 (Del. Super. 1980).
[31] *Helm*, 2007 WL 1651968, at *30 (quoting *O'Connor v. Diamond State Tel. Co.*, 503 A.2d 661, 663 (Del. Super. Ct. 1985); citing Restatement (Second) of Torts § 409 (1965)).
[32] Restatement (Second) of Torts § 409 (1965).

9

and derived from various sections of the Restatement, including §§ 324A, 414, and 422.[33]

## I. Landowner Liability in Asbestos Litigation

The parties rely on a series of cases that have identified and clarified the duty of care that a landowner owes to employees of independent contractors who are hired to perform work on their premises specifically in asbestos litigation.[34] To be precise, the parties do not dispute the rationale of the holdings of *Roca, Wolleyhan (I* and *II), Wenke* and *Helm.* Instead, they argue about nuances in the rulings to support their respective positions. Therefore, they ask the Court to make a determination as to whether Rath falls into a category of employee for which no duty is owed as a matter of law or whether he is permitted to invoke the provisions found in the various sections of the Restatement that would potentially hold the Defendant landowners liable for his alleged exposure to asbestos. To do so requires an understanding of the respective cases in order to determine where Rath fits into the matrix.

### A. *Roca*

In 2002, although factually different from this case, the *Roca* decision provided the framework that served to develop more recent decisions of premises

---

[33] *Wenke,* 2007 WL 1651964, at *7 (noting that the Restatement provides the same three "recognized exceptions" like the common law); *Helm,* 2007 WL 1651968, at *32 (stating that the exception of voluntarily assuming safety responsibilities derives from § 324A of the Restatement).
[34] *See generally Roca,* 2002 WL 31007993; *Wooleyhan I,* 2005 WL 6515534; *Wooleyhan II,* 2006 WL 1214980; *Wenke,* 2007 WL 1651964; *Helm,* 2007 WL 1651968.

10

and landowner liability in asbestos litigation. In *Roca*, the plaintiff worked as a union pipefitter for different independent contractors.[35] He alleged he was exposed to asbestos and asbestos-containing materials while working at various sites and that the landowners were responsible under the peculiar risk doctrine found in §§ 413, 416, 427 of the Restatement.[36]

The Court explained that under Chapter 15 of the Restatement, generally landowners are not liable to an independent contractor's employees working on their premises.[37] The Court further determined that employees of an independent contractor are not members of the protected class under any of the exceptions to this general rule.[38] In referencing § 409 of the Restatement, the Court explained that the "employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."[39]

The Court considered various sections of the Restatement, Comments and Reporter's Notes to support its determination that contractors' employees are not included in the class of "others."[40] It held, and the Supreme Court affirmed,[41] that

---

[35] *Roca*, 2002 WL 31007993, at *1.
[36] *Id.* (arguing defendants owed plaintiff a duty of care).
[37] *See id.* at *2.
[38] *Id.* at *2-4.
[39] *Id.* at *2 (quoting Restatement (Second) of Torts § 409 (1965)).
[40] *Roca*, 2002 WL 31007993, at *2-3.
[41] *See Roca v. E.I. DuPont de Nemours and Co.*, 842 A.2d 1238, 1240 (Del. 2004) ("We have also determined that the final judgments entered by the Superior Court should be affirmed on the basis of and for the reasons stated by the Superior Court in its memorandum Opinion dated September 3, 2003.").

11

the plaintiff was not "a member of the protected class of 'others' for purposes of the peculiar risk doctrine."[42]

## B. *Wooleyhan I*

In 2005, following the *Roca* decision, *Wooleyhan I* addressed landowner liability to employees of contractors.[43] There, the plaintiffs were employees of independent contractors hired by landowner defendants to perform work on their premises.[44] The case involved two types of employee plaintiffs who allegedly had been exposed to asbestos.

The first set alleged direct exposure through their own work. The second set of employees were painters, electricians, or telephone linemen, "who did not work with asbestos but were exposed to asbestos dust during the course of their work."[45] Those that did not work with asbestos but were exposed during the course of their

---

[42] *Roca*, 2002 WL 31007993, at *4 (finding that the court did not need to address the second question of "whether Defendants' use of asbestos-containing insulation in the 1960's did or did not involve a peculiar risk to Plaintiff").

[43] *See Wooleyhan I*, 2005 WL 6515534, at *1.

[44] *Id.*

[45] *Id.*

work sought relief under various sections of the Restatement, including §§ 324A[46] and 343.[47]

The Court granted summary judgment against those who alleged direct exposure through their own work. It held that "Chapter 15 provides a remedy for a third person, that is, for 'another,' but not for a contractor or his employees who have contracted to perform the work which causes the injury."[48] As to these plaintiffs, the "discussion of Chapter 15 liability ends here,"[49] no exception to the general rule was applicable, and the Court granted summary judgment.

The Superior Court, however, denied summary judgement as to the second group of plaintiffs under § 343 of the Restatement. These are employees who did not work with asbestos but were exposed to asbestos dust during the course of their work. As to this group, the Court explained that the plaintiffs "who performed work

---

[46] Under § 324A of the Restatement, regarding workplace safety, it states:
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (1) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

[47] Under § 343 of the Restatement,
> A possessor of land is subject to liability for physical harm caused by his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

[48] *Wooleyhan I*, 2005 WL 6515534 at *2.

[49] *Id.* at *2.

such as painting are 'others' for the purposes of Chapter 15 of the Restatement" and their claims are viable.[50] These plaintiffs raised claims under §§ 410 and 414 of the Restatement alleging defendant maintained control of the work,[51] § 324A of the Restatement alleging defendant DuPont assumed responsibility for the safety of the job site, and § 343 of the Restatement, invoking the safe workplace doctrine against multiple defendants.[52] The *Wooleyhan I* Court held that no liability attached under §§ 324A, 410, and 414 and granted summary judgment.[53] However, the Court denied summary judgment under § 343 and stated that genuine issues of fact remained regarding the landowners' knowledge of the hazards of asbestos exposure.[54] In consolidated appeals, both sides requested Supreme Court review in *Wooleyhan II*.

## C. *Wooleyhan II*

In 2006, the Court considered the Superior Court's denial of its summary judgment motion under § 343 of the Restatement with respect to those that did not work directly with asbestos but were exposed to asbestos dust during the course of their work.[55] In the first part of its order, the Delaware Supreme Court found that

---

[50] *Wooleyhan I*, 2005 WL 6515534, at *2 (distinguishing between different types of plaintiffs based on exposure to asbestos).
[51] *Id.* at *2-3.
[52] *Id.* at *4-7.
[53] *Id.* at *7 (granting summary judgment as to defendants' liability under §§ 324A, 410, and 414).
[54] *Id.* at *7 (denying summary judgment on defendants' liability under § 343).
[55] *Wooleyhan II*, 2006 WL 1214980, at *1.

14

the Superior Court applied the incomplete legal standard under § 343, vacated the judgment, and remanded the case.[56] Specifically, the Supreme Court determined that § 343 requires more than a mere finding of the landowner's knowledge regarding the existence of a latent hazard on its premises to deny summary judgment.[57]

The Supreme Court also addressed the appeal from those who alleged direct exposure through their own work.[58] The Supreme Court held:

> If the independent contractor, through its work, causes the condition that might otherwise give rise to landowner liability under § 343 of the Restatement, employees of that independent contractor have no basis to claim that the landowner is liable for injuries resulting from that condition....Accordingly, the employees of an independent contractor may not invoke § 343 of the Restatement to establish landowner liability for injuries caused by conditions created by their independent contractor-employer.[59]

Thus, the Supreme Court affirmed the holding below. Those who alleged direct exposure through their own work were precluded from invoking the provisions under § 343 of the Restatement to establish landowner liability for injuries caused by conditions created by their own independent contractor-employer.[60] No duty is owed to this employee plaintiff as a matter of law.

---

[56] *Wooleyhan II*, 2006 WL 1214980, at *2, 3.
[57] *See id.* at *1, 2.
[58] *Id.* at *3 (explaining Superior Court invoked the general rule and found that no exception to this rule was applicable).
[59] *Id.* (identifying landowner liability under § 343 to employees of independent contractors).
[60] *See id.*

15

## D. *Wenke* and *Helm* – Group A and Group B Plaintiffs

After both *Wooleyhan* decisions, there remained issues regarding landowner liability in asbestos litigation. In 2007, the Superior Court issued the companion cases of *Wenke* and *Helm* to address said issues. In *Wenke* and *Helm*, the Court was asked to address lingering questions regarding the applicability of the provisions of the Restatement for two types of plaintiffs in landowner liability claims.[61] The Court defined them as group A and B plaintiffs.

Group A plaintiffs consist of "employees of independent contractors who did not work directly with asbestos (such as painters or other tradesmen), but allege they were exposed to asbestos on the defendants' premises while working alongside other contractors who were working directly with asbestos."[62] These plaintiffs "are injured as a result of the work (and negligence) of others including, arguably, the landowner."[63] Group B plaintiffs "are employees of independent contractors who worked directly with asbestos while on the defendants' premises, such as asbestos installers or asbestos insulators,"[64] and are "injured by the very hazards created by their own work on the property—the work they were contracted by the landowner to perform."[65]

---

[61] *See Wenke*, 2007 WL 1651964, at *2; *Helm*, 2007 WL 1651968, at *1.
[62] *Wenke*, 2007 WL 1651964, at *1 (identifying group A plaintiffs).
[63] *Id.* at *10.
[64] *Id.* (classifying group B plaintiffs).
[65] *Id.* at *10.

16

The *Wenke* decision focused on claims brought by group B plaintiffs, and granted summary judgment in favor of the landowner defendant. It found that "*Wooleyhan I* and *Wooleyhan II* both stand for the proposition that group B plaintiffs may not hold landowners accountable for injuries sustained as a result of their work with asbestos while on the landowner's premises."[66] It is clear that *Wenke* echoed the rationale of both *Wooleyhan* decisions. It noted that *Wooleyhan I* rejected plaintiffs' claims under any Chapter 15 exception to the general rule, and that *Wooleyhan II* affirmed this, and concluded that a group B plaintiff could not pursue claims under § 343.[67]

*Wenke* similarly considered the plaintiffs' theory of liability under § 324A, and the Court found it failed for the same reasons as the other claims.[68] In particular, the *Wenke* Court noted that the provisions of § 324A apply to third persons, and this "reference to 'third persons' does not include employees of the contractor whose work creates the condition that causes the injury."[69] Thus, the Court found that the landowner did not owe a duty to the plaintiffs "to protect them from the hazards of their own job."[70] Relying on *Roca* and both *Wooleyhan* decisions, the Court in *Wenke* held that the plaintiffs' claims failed because they were exposed to asbestos

---

[66] *Wenke*, 2007 WL 1651964, at *2.

[67] *See id.* at *11 (citing *Wooleyhan II*, 2006 WL 1214980, at *3).

[68] *See id.*

[69] *Id.* at *11. (citing *Wooleyhan I*, 2005 WL 6515534, at *4).

[70] *Id.* at *12.

"as a result of their own work or *their employers' work* with asbestos."[71] Summary judgment was granted in favor of the defendants.[72] *Helm* was issued on the same day and focused on the group A plaintiffs.

## II. Rath is Not a Group A Plaintiff under *Helm*

Rath argues he should be permitted to invoke the provisions found in the various sections of the Restatement that would potentially hold the Defendant landowners liable for his alleged exposure to asbestos. To survive summary judgment, he must argue that he should be considered a group A plaintiff under *Helm*. He also argues that *Rabar* is more applicable to his case. This Court disagrees.

*Rabar* is not an asbestos case. The Court there addressed landowner liability in a construction site accident involving multiple-employers. The plaintiff sought to hold duPont "liable under the doctrine of negligence per se for alleged violations of certain occupational safety regulations promulgated by the Delaware Department of Labor...."[73] That is not at issue here. Furthermore, the Court in *Rabar* determined summary judgment was inappropriate because the record supported that duPont had assumed the role of the general contractor.[74] The *Rabar* Court found there were issues of material facts as to work area control and assumption of safety

---

[71] *Wenke*, 2007 WL 1651964, at *12 (quoting *Wooleyhan II*, 2006 WL 1214980, at *3) (emphasis added).
[72] *Id.*
[73] *Rabar*, 415 A.2d at 502.
[74] *See id.* at 507 (stating that record would support conclusion that "duPont had also actually assumed the role of general contractor for many significant purposes on the...project").

18

regulations.[75] Those facts do not exist here as to any of the Defendant landowners. Rath incorrectly relies on *Rabar* to argue that the Defendant landowners controlled the manner and method of his work.

*Helm*, on the other hand, is an asbestos case. There, the Court addressed the claims of group A plaintiffs that allows them to impose duties on landowners under § 343 and other provisions of the Restatement and it analyzed the exceptions to the general rule.[76] The *Helm* Court ultimately granted summary judgment in favor of the landowner defendant, finding that the landowner defendant did not owe a duty to the plaintiff under any of the three exceptions to the general rule that a landowner is not liable.[77] Those recognized exceptions to the general rule are that "liability may be imposed when the landowner or general contractor: (1) exercises active control over the manner and method of the independent contractor's work, (2) voluntarily assumes responsibility for safety, or (3) maintains possessory control over the work area during the work."[78] The exceptions are derived from §§ 410,

---

[75] In particular, the Court in *Rabar* explained that certain findings could be made based on the record, including that duPont coordinated and scheduled the phases of the project, directed when and where various aspects of the work would be done, supplied construction materials and equipment, contracted out specialty work, named its own employee as the contractor's general supervisor on the project, and had the ability to "terminate the contract at any time for its own convenience." *See id.* at 505-08.

[76] *See Helm*, 2007 WL 1651968, at *1. There, the Court considered the safe workplace doctrine under § 343 and granted the defendants' motions for summary judgment as to their § 343 claims, and granted one defendant's motion for summary judgment as to the three exceptions that Rath here similarly argues.

[77] *Id.* at *33.

[78] *Id.* at *30 (quoting *Handler Corp. v. Tlapechco*, 901 A.2d 737, 740-41 (Del. 2006)).

19

414, and 422 of the Restatement alleging defendant maintained control of the work and possessory control of the work area,[79] and § 324A of the Restatement alleging that defendant landowner assumed responsibility for safety of the job site.

That said, *Helm* is not applicable here. First, Rath is distinguishable from the *Helm* plaintiffs. The *Helm* case considered four separate plaintiffs who brought claims against multiple defendants.[80] These plaintiffs were employed by one contractor but there was evidence that other contractors or employers were also hired to work at the facilities at the same time.[81] These plaintiffs, who did not work directly with asbestos, were identified as group A plaintiffs because they were exposed to asbestos by working alongside of others who worked directly with asbestos.[82] Unlike in *Helm*, there is no evidence presented that Rath was exposed to asbestos by other contractors. Here, Rath testified that all of the other trades working around him were employed by the same contractor—Catalytic.

Even if Rath were qualified to invoke provisions of the Restatement and argue the exceptions to the general rule, this Court finds the record does not support a different outcome. First, this Court agrees with Defendant landowners that Rath failed to respond to the argument under § 343 and he has waived the right to invoke

---

[79] *Helm*, 2007 WL 1651968, at *2-3.
[80] *Id.* at *1-15.
[81] *See id.* at *2-13 (discussing each plaintiffs' employment and exposure history and identifying other employees at the defendants' facilities who were employed by other contractors or employers).
[82] *See id.* at *1 (explaining that this opinion focuses on group A plaintiffs).

20

it. Nevertheless, his claim also fails to establish any of the following exceptions that would impose liability on the Defendant landowners.

The record is highlighted below primarily to demonstrate why this case is distinguishable from *Helm* and more appropriately analyzed under *Wooleyhan* (*I* and *II*) and *Wenke*. Identifying the considerations under *Helm* reinforces the reasons why he is not a group A plaintiff who would otherwise be entitled to argue the applicability of the following exceptions.

## A.    Whether the Landowner Maintained Active Control

First, this Court has explained that there is no bright line test, but "it is clear that active control does not exist merely because the owner or general contractor maintains 'general superintendence' over the work to ensure that it complies with the contract specifications."[83] It further provides that "[t]here must be discernable control over the manner and method of the performance of the contract work such that 'the contractor is not entirely free to do the work in his own way.'"[84] The court may consider the following factors in determining whether the landowner maintained active control:

> (1) who provided the plaintiff with the tools and equipment to perform the work; (2) who had the authority to hire, fire, or discipline the plaintiff; (3) who did plaintiff approach to address workplace concerns; (4) who controlled the operations at the work site; (5) who directed the

---

[83] *Helm*, 2007 WL 1651968, at *31 (quoting *In re Asbestos Litig. (Hudson)*, 2006 WL 3872846, at *3 (Del. Super. Jan. 11, 2007)).
[84] *Id.* (quoting *Hudson*, 2006 WL 3872846, at *3).

21

plaintiff's work; and (6) whether the landowner was in a position of authority to provide a safe workplace for all trades.[85]

This record shows that Defendant landowners did not actively control the manner and method of Rath's work. Any control these Defendants may have had was only general superintendence[86] and does not establish the requisite degree of control to impose a duty of care on DP&L, Getty, or Sunoco. As to DP&L, it may have provided some work materials,[87] but the record establishes that Rath was employed by Catalytic, his direct supervision came from Catalytic foremen, he followed Catalytic safety rules, his paycheck came from Catalytic, safety meetings were run by Catalytic foremen, he did not have direct work-related contact with DP&L people, and he made complaints directly to Catalytic foremen.[88] This is similar to his work at Getty, where he was hired, directed, paid, and could be fired by Catalytic, and he presented workplace concerns to his Cataytic foreman.[89] Lastly, at the Sunoco plant, he was also hired, paid, and supervised by Catalytic, he presented any concerns to Catalytic, and was not allowed to speak with plant supervisors.[90]

---

[85] *Helm*, 2007 WL 1651968, at *31 (quoting *Hudson*, 2006 WL 3872846, at *3).
[86] *See id.* at *31.
[87] Rath testified that he was not one hundred percent sure who supplied his work materials. Discovery Deposition at 215.
[88] *See* Discovery Deposition at 213, 215-17.
[89] *See id.* at 122-25, 169-70.
[90] *See* Discovery Deposition at 144, 148.

## B. Voluntarily Assume Safety Responsibilities for Plaintiff's Work

The Delaware Supreme Court has held that:

> [T]hose who have responsibility for workplace safety must take reasonable measures to ensure the safety of those at the work site. A duty to ensure workplace safety can be imposed upon a party who [voluntarily], by agreement or otherwise, undertakes responsibility for implementing required safety measures. Where breach of the assumed duty causes injury to a worker, the responsible party can be held liable under the traditional principles of negligence law.[91]

This second exception is derived from § 324A Restatement.[92] Again relying on *Rabar*, the argument that all three Defendants voluntarily assumed safety responsibilities is without merit. The record demonstrates that the Defendant landowners did not voluntarily assume responsibility for Rath's safety at their facilities. Rath testified the daily safety meetings were conducted by his foreman, employed by Catalytic.[93] Rath followed Catalytic safety rules while working at the DP&L site.[94] At Getty, Rath's testimony provides that Catalytic undertook the safety responsibility for his work, not the refinery owner.[95] The daily and weekly safety meetings were conducted by Catalytic foremen and the general foreman.[96] Rath provided inconsistent testimony about who provided him with safety equipment, including a safety belt, hat, and glasses, testifying first that Getty

---

[91] *Helm*, 2007 WL 1651968, at *32 (quoting *Handler*, 901 A.2d at 746-47).
[92] *See Helm*, 2007 WL 1651968, at *32.
[93] *See* Discovery Deposition at 205, 216-17.
[94] *See id.* at 216.
[95] *See id.* at 126-28; Video Deposition at 20-21.
[96] *See* Discovery Deposition at 127.

23

provided the equipment but later testifying that it was Catalytic.[97] He also testified the hard hat that he was required to wear said "Catalytic" across the front.[98] As to Sunoco, Rath testified that similar to his work at Getty, the general foreman from Catalytic would run the safety meetings.[99]

## C.    Possessory Control Over Rath's Work Area

Under the last exception, an owner may be liable "if it retained sufficient control over the part of the work or if it retained possessory control over the work premises during the work."[100] In *Helm*, the Court explained that it would "consider whether the landowner assumed most of the general contractor responsibilities at the overall managerial level[,] such as setting deadlines for the project, setting standards as to how the project would be performed, supplying construction materials and equipment, subcontracting out specialty work, and controlling security at the job site."[101] The *Helm* Court found the work-area control test from *Rabar* is still valid, and "those found to be in control of a defined work area are under a common law duty to make reasonable efforts to provide for the safety of workers in the control area."[102]

---

[97] Video Deposition at 30; Discovery Deposition at 128.
[98] Discovery Deposition at 128.
[99] Discovery Deposition at 148-49.
[100] *Raber*, 415 A.2d at 506 (citing Restatement of Torts (Second) §§ 414, 422(a)).
[101] *Helm*, 2007 WL 1651968, at *33 (citing *Rabar*, 415 A.2d at 507; *Bryan v. Delmarva Power & Light*, 1995 WL 653987, at *8-9 (Del. Super. Oct. 2, 1995)) (internal quotations omitted).
[102] *Id.* (quoting *Hawthorne v. Edis Co.*, 2003 WL 23009254, at *8 (Del. Super. July 14, 2003); citing *Handler*, 901 A.2d at 749).

Here, Rath's testified that Catalytic's foreman, not DP&L, Getty, or Sunoco, directed and supervised his work, and also provided him with instructions for his daily work. Rath did not have contact with the site supervisors. In addition, Catalytic employed all of the workers at the facility and assigned him his work. These Defendant landowners did not maintain possessory control over Rath's work area.

### III.    Rath Is a Group B Plaintiff under *Wooleyhan (I and II)* and *Wenke*

The record is clear that Catalytic was the only contractor at the various facilities and was the sole employer of all the employees of the different trades that were working there, including the insulators, pipefitters, and laborers that worked alongside Rath. Therefore, all work performed by the other tradesmen that involved asbestos were also employed by Catalytic. Relying on *Wooleyhan (I and II)*, as well as *Wenke,* Rath's claims fail because he alleges exposure as a result of his own employer's work with asbestos. In line with these cases, Rath is not an "other" or "third-person" under the provisions of the Restatement because he is an employee of the contractor whose work created the condition that caused Rath's alleged injury.

Rath urges this Court to focus primarily on the nature of his work to find that he is entitled to hold Defendants' liable for his injuries under the exceptions to the general rule. Aside from the reasons already stated, focusing solely on the nature of Rath's work ignores the legal underpinnings of premises liability theories. It is true

25

that the *Wenke* Court separated the classification of the groups "based on the nature of the work they performed while on the defendants' premises."[103] Without more, under *Wenke*, Rath's trade as a carpenter would qualify him as an employee of an independent contractor who did not work directly with asbestos, such as painters or other tradesmen. However, this is not the end of the analysis. This classification of plaintiff also requires he demonstrate he is "injured as a result of the work (and negligence) *of others* including, arguably, the landowner."[104] For the reasons stated, the record is clear there were no other contractors. Only Catalytic.

Now Rath does argue that by "others," he also means the Defendant landowners themselves. He alleges that the pipe covering and insulation in Defendants' facilities were negligently maintained by the landowners and exposed him to asbestos. In support, there was an exhibit provided to Rath at his deposition that depicted corroded pipes. He was asked by Plaintiff's counsel if the photograph represented "substantially similar" conditions he encountered at Defendants' sites. He answered affirmatively. Plaintiff's counsel seeks to introduce the testimony and the photograph as evidence of Defendants' culpability in maintaining its facilities.

---

[103] *Wenke*, 2007 WL 1651964, at *1.
[104] *Id.* at *10 (emphasis added).

26

This argument is without merit. During oral arguments, when this Court asked for clarification as to which of the three Defendants' sites was identified in the photo, Plaintiff's counsel conceded that the photograph does not depict any of Defendants' sites. It was offered merely to ask Rath if the piping and insulation conditions at Defendants' facilities were substantially similar to the conditions in the photograph, such that Plaintiff was exposed to the same type of pipe insulation as shown in the photograph.

This Court raised concern regarding the relevance and/or the admissibility of whatever representations may have been made by Rath as to this photograph. Even if the photo did depict a similar photo of corroded pipe insulation in an unknown industrial site—if it was an industrial site—there is nothing to suggest that the pipe insulation in the photograph contained asbestos or more importantly that the pipe insulation on Defendants' premises contained asbestos. The only evidence that could suggest any exposure to asbestos is therefore tied to the work of Rath's fellow tradesmen employed by Catalytic.

Finally, Rath did not seek workers' compensation benefits from Catalytic for his alleged work-related injuries. Under the exclusivity provisions of 19 *Del. C.* § 2304, Rath would have been unable to file negligence claims against Catalytic. He seeks to impose this liability instead on the landowner based on alleged acts of the same Catalytic employees. This is problematic. The *Wenke* Court similarly

27

considered the workers' compensation argument to support the exclusion of group B plaintiffs from the class of protected persons.[105] Also as the *Roca* Court first explained, independent contractors who pay workers' compensation premiums are protected from further liability, and landowners should be similarly shielded when these property owners hire contractors and indirectly pay the cost of such coverage.[106] Although not dispositive of the ruling, similar ancillary considerations apply here.

---

[105] *Wenke*, 2007 WL 1651964, at *10 ("The exclusion of group B plaintiffs from the class of protected persons under Chapter 15 is consistent with the relationship that exists between the landowner, his contractor, and the contractor's employees. The unique features of this relationship include the contractor's (and his employees') familiarity with the peculiar risks of the contract work, the contractor's legal obligation to procure workmen's compensation coverage for his employees in the event they are injured by the risks of the job, and the fact that the employer/landowner indirectly pays the cost of the coverage in the fees paid to the contractor for the work to be performed.").

[106] *Roca*, 2002 WL 31007993, at *3.

## CONCLUSION

Following the holdings of *Wooleyhan* (*I* and *II*), and *Wenke*, Defendant landowners have met their burden of showing that there are no genuine issues of material fact under Rule 56. Rath fails to establish that a duty is owed to him to protect him from the hazards of the work which his independent contractor-employer was contracted to perform at Defendants' various sites. Since no duty of care is owed to him as a matter of law, Defendants' Motions for Summary Judgment are **GRANTED** as to all claims asserted by Rath, including any cross-claims.

_____
Judge Vivian L. Medinilla

cc:    All Counsel of Record (*via File&Serve*)

29